**Jeremiah SCHEMMER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (U.S. STEEL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 29, 2003.

Decided Sept. 24, 2003.

Fred M. Feder, Philadelphia, for petitioner.

Thomas E. Panzer, Doylestown, for respondent.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge and MIRARCHI, JR., Senior Judge.

PELLEGRINI, Judge.

Jeremiah Schemmer (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) that his 1990 work-related injury had resolved into the specific loss of his lower left leg.

Claimant was employed by U.S. Steel (Employer) as a crane operator. In 1977, as a result of a motorcycle accident, Claimant's lower left leg was amputated approximately seven inches below the knee. After being fit with a prosthesis, Claimant returned to work. In 1990, Claimant slipped and fell at work, and because his prosthesis came loose, he landed on the stump of his left leg which caused a contusion that swelled and became infected. A notice of compensation payable was issued, and beginning in October of 1990, total disability benefits were paid. In late 1991, Claimant had an additional three inches amputated below the knee of his lower left leg. On June 29, 2001, Employer filed a petition alleging that as of January 17, 2001, Claimant's 1990 injury had resolved into a "specific loss" of his lower left leg under the Workers' Compensation Act (Act).[1]

In support of its petition, Employer presented the testimony of Leonard Kamen, D.O. (Dr. Kamen), board certified in the field of physical medicine and rehabilitation. Dr. Kamen testified that when he examined Claimant on January 17, 2001, there was atrophy in Claimant's left thigh, but Dr. Kamen attributed it to the original 1977 non-work-related amputation. Although he noted that Claimant's leg was deformed, Dr. Kamen opined that Claimant contributed to the deformity because his prosthesis was improperly fitted and that Claimant did not appear concerned about preventing any future problems associated with an improperly fitted prosthesis. Other than the above-mentioned injuries, Dr. Kamen found no objective evidence of any other injury.

In opposition, Claimant testified that as a result of the 1990 injury, there was frequent breakdown of the skin and residual limb pain near the amputation site. Claimant also testified that as a result of the 1990 injury, he suffered from back and hip pain. However, Claimant did not present any medical testimony regarding those injuries.

Accepting Dr. Kamen's testimony as credible and rejecting Claimant's testimony, the WCJ found that as of January 17, 2001, the 1990 injury resulted in a specific loss to Claimant's lower left leg because the amputation was between the knee and the ankle. While Claimant was entitled to

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626. Section 306(c)(24) of the Act, 77 P.S. § 513(24), provides in part as follows:

 [A]mputation at the ankle shall be considered as the equivalent of the loss of a foot.... [A]mputation between the ankle and the knee shall be considered as the loss of a lower leg.... [A]mputation at or above the knee shall be considered as the loss of a leg.

specific loss compensation of 350 weeks under Section 306(c)(5) of the Act, 77 P.S. § 513(5),[2] for loss of his lower left leg, the WCJ deducted 250 weeks for the non-work-related loss of Claimant's foot in 1977[3] and granted Employer a credit for the benefits already paid. Claimant appealed to the Board which affirmed and this appeal followed.[4]

■ Because his leg had been amputated below the knee in 1977, Claimant contends that the WCJ and the Board erred by finding that the 1990 injury had resolved into the specific loss[5] of his lower left leg because he cannot sustain a specific loss to the same limb. Section 306(c)(5) of the Act provides three different specific losses applicable here: loss of a foot, loss of a lower leg and loss of a leg. 77 P.S. § 513. There is no dispute that the amputation resulting from the 1990 injury was not at the ankle (loss of a foot) or above the knee (loss of the entire leg) but between the ankle and the knee. Under Section 306(c)(5) of the Act, the only loss that Claimant could have sustained as a result of the amputation was a specific loss of the lower leg.

■ Claimant also contends that because he suffers from skin irritation, atrophy and pain in the back and hip, he is entitled to continuous weekly benefits because these injuries constitute "separate and distinct injuries" apart from the specific loss to his lower left leg. Under Section 306(d) of the Act, 77 P.S. § 513(25), a claimant may be entitled to recover for total disability if the claimant suffers from "separate and distinct" injuries apart from a work-related injury.[6]

2. Section 306(c)(5) of the Act, 77 P.S. § 513(5), provides as follows:

For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

. . .

(5) For the loss of a lower leg, sixty-six and two-thirds per centum of wages during three hundred fifty weeks.

3. Section 306(c)(4) of the Act, 77 P.S. § 513(4), provides as follows:

For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

. . .

(4) For the loss of a foot, sixty-six and two-thirds per centum of wages during two hundred fifty weeks.

4. Our scope of review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Sheridan v. Workmen's Compensation Appeal Board (Anzon)*, 713 A.2d 182 (Pa. Cmwlth.1998).

5. A specific loss is either (1) the loss of a body part by amputation or (2) the permanent loss of use of an injured body part for all practical intents and purposes. *Wise v. Workers' Compensation Appeal Board (City of Philadelphia)*, 810 A.2d 750 (Pa.Cmwlth.2002). Determining whether an injury is a specific loss is a question of fact to be determined by the WCJ. *Allegheny Ludlum Steel Corp. v. Workers' Compensation Appeal Board (Malobicky)*, 753 A.2d 330 (Pa.Cmwlth.2000). This Court has held that once an injury is determined to be a specific loss, the claimant is entitled to no more compensation than that provided for in Section 306(c) of the Act, 77 P.S. § 513, even though the claimant may be totally disabled by the injury. *Sharon Steel Corp. v. Workers' Compensation Appeal Board (Frantz)*, 790 A.2d 1084 (Pa.Cmwlth.2002).

6. Section 306(d) of the Act, 77 P.S. § 513(25), provides, in pertinent part, as follows:

Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in [Section 306(c)] of this section, the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries, but in that event the employe shall not receive compensation provided in [Section 306(c)] of this section for the specific healing period.

The claimant has the burden of proving that the injuries to other parts of the body were the direct result of the permanent injury, that the disability is "separate and distinct" from injuries that normally follow the permanent injury, and that the disability endured beyond the time mentioned in Section 306(d). *Killian v. Heintz Div. Kelsey Hayes*, 468 Pa. 200, 360 A.2d 620 (1976). There must be a "destruction, derangement or deficiency in the organs of the other parts of the body." *Id.* at 207, 360 A.2d at 624. Also, a "separate and distinct" injury does not include "pain, annoyance, inconvenience, disability to work, or anything normally resulting from the permanent injury." *BCNR Mining Corp. v. Workmen's Compensation Appeal Board (Hileman)*, 142 Pa.Cmwlth.588, 597 A.2d 1268, 1270 (1991), *appeal denied*, 530 Pa. 646, 607 A.2d 256 (1992).

In this case, the causal connection between the specific loss injury and the hip and back injury are not obvious due to the previous 1977 non-work-related injury. Accordingly, medical testimony was necessary to establish that the injury was work-related. *Killian.* Claimant provided no expert medical testimony to show that his skin irritation, atrophy or pain in the back and hip were caused by or "separate and distinct" from the 1990 injury. In any event, Dr. Kamen testified that any atrophy was directly attributed to the 1977 injury, and any complaints of back and hip pain were not the result of the 1990 injury but attributable to the 1977 injury. Because the WCJ was free to accept or reject the testimony of witnesses and assess their

credibility,[7] the WCJ and the Board did not err in holding that Claimant failed to meet his burden in establishing that he suffered separate and distinct injuries apart from the specific loss to his left leg.

■ Finally, Claimant argues that assuming he suffered a specific loss, the WCJ and the Board erred by deducting 250 weeks of his specific loss payments because he did not have a left foot due to his 1977 non-work-related injury. Only two cases, both decided by our Superior Court, address whether an employer can deduct weeks of compensation for previously lost body parts after a claimed specific loss. In *Leech v. Builders' Supply Co.*, 102 Pa.Super. 543, 157 A. 629 (1931), a case identical to this one, the claimant suffered the loss of his foot and a portion of his left leg below the knee. As here, the claimant's leg was later amputated after a work-related injury. The employer then claimed that the claimant's injury resulted in a specific loss to his lower leg less the statutory compensation for the claimant's foot. The Superior Court agreed, holding that the claimant could not recover for the loss of his foot because the claimant did not have a foot when he sustained a work-related injury. Similarly, in *Miles v. Gallagher*, 194 Pa.Super. 338, 168 A.2d 805 (1961), the claimant lost his finger in a non-work-related accident and later sustained a work-related injury to his arm which was eventually amputated. Again, the Superior Court deducted the weeks attributable to the loss of the finger because it did not exist at the time of his work-related injury.

---

7. In workers' compensation cases, the WCJ determines the credibility of witnesses and assesses evidentiary weight. *Northeastern Hospital v. Workmen's' Compensation Appeal Board (Turiano)*, 134 Pa.Cmwlth.164, 578 A.2d 83 (1990). Such determinations will be upheld as long as they are based upon substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Co. v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Cmwlth.382, 539 A.2d 11 (1988). The WCJ is free to accept or reject the testimony of any witness in whole or in part. *Northeastern Hospital.*

We agree with the reasoning of the Superior Court in *Leech* and *Gallagher* that the loss of a limb includes as part of that compensation loss of other parts of the body because that other part of the body has already been lost, or, in the case that it was lost as a work-related injury, has already been compensated. Claimant's 1977 injury was non-work-related and resulted in the loss of his foot and part of his lower leg. At the time of the work-related injury in 1990, Claimant did not have a foot. Because Claimant cannot recover for that which he did not have, the WCJ's determination that the Employer was obligated to compensate Claimant for 100 weeks, the difference between 350 weeks of compensation for the lower leg and 250 weeks for the foot, was proper.

Accordingly, for the foregoing reasons, the decision of the WCJ and the Board is affirmed.

### *ORDER*

AND NOW, this *24th* day of *September*, 2003, the order of the Workers' Compensation Appeal Board, dated May 7, 2003, at No. A02–2100, is affirmed.