**Migdalia PIMENTEL, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (UNITED NEIGHBORHOOD CENTERS OF LACKAWANNA COUNTY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 27, 2004.

Decided March 24, 2004.

Nicholas E. Fick, Scranton, for petitioner.

Thomas R. Nealon, Scranton, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Migdalia Pimentel (Claimant) appeals from an order of the Workers Compensation Appeal Board (Board) affirming the Compromise and Release Petition approved by a Workers' Compensation Judge (WCJ) pursuant to Section 449 of the Workers' Compensation Act (Act).[1]

On July 19, 2002, Claimant sustained a work-related injury to her lower back while working for United Neighborhood Centers of Lackawanna County (Employer).[2] Claimant received benefits in the amount of $331 per week based on an average weekly wage of $492.93. In October of that same year, Employer filed a Petition to Seek Approval of a Compromise and Release Agreement (Petition). Claimant did not file an answer, but the parties submitted a LIBC–755 (Form LIBC–755)[3] Compromise and Release

---

1. Act of June 2, 1915, P.L. 736, *added by* Act of June 24, 1996, P.L. 350, *as amended,* 77 P.S. § 1000.5. Section 449(a) provides authority for settlement of workers compensation cases, *stating as follows:*

 (a) Nothing in this act shall impair the right of the parties interested to compromise and release, subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death.
 77 P.S. § 1000.5(a).

2. Claimant's testimony indicates that she gave Employer two weeks notice that she was terminating her employment, and the injury occurred during that two-week span.

3. The Bureau of Workers' Compensation (Bureau) has developed Form LIBC 755 which

Agreement (Agreement) and supporting documentation to release Employer from all claims for benefits arising out of the work-related injury.[4] The Agreement set forth the following relevant terms:

- Claimant agrees that she has obtained full recovery from her work-related injury.

- Claimant agrees that she is capable of returning to full-duty employment.

- In exchange for a lump sum payment of $4,800., Claimant agrees to release, acquit, and discharge Employer from any additional liability for the payment of wage loss benefits, medical benefits, specific loss benefits, and any and all other benefits that she is or may be entitled to receive as a result of her work-related injury.[5]

- The parties are not aware of any outstanding bills relating to the care and treatment of Claimant's work-related injury.

- Employer shall not be responsible to pay for any medical bills incurred by Claimant for the care and treatment of her work-related injury on and after December 3, 2002.

- The parties entered into the Agreement because Claimant wishes to receive a lump-sum payment, and Employer desires to close its file.

- Each party is responsible for its own litigation costs.

Under the "Employee's Certification" portion of Form LIBC 755, Claimant initialed where indicated near the following term:

I have not been represented by an attorney of my own choosing. However, I have been told that I have the right to be represented by an attorney of my own choosing in this proceeding. I have made my own decision not to have an attorney represent me. /s/ M.P. (Employee's Initials)

(Form LIBC–755, Reproduced Record at 16a). Immediately below, Claimant signed the Certification before two witnesses. Above the signature line is the following admonition:

DO NOT SIGN THIS DOCUMENT UNLESS YOU UNDERSTAND THE FULL LEGAL SIGNIFICANCE OF THIS AGREEMENT.

(Form LIBC–755, Reproduced Record at 16a).[6]

---

specifies the statutory requirements of Section 449. *See* 77 P.S. § 1000.5(d) (requiring the Department of Labor to prepare a form for use by the parties). For the specifics that must be included in Form LIBC–755, see 77 P.S. § 1000.5(c)(1)–(11).

4. Section 449(b) provides, in relevant part, as follows:

(b) Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the workers' compensation judge for approval. 77 P.S. § 1000.5(b).

5. Claimant's testimony in this matter indicates that Employer originally offered Claimant a lump sum of $3,500, but this figure was

negotiated to $4,800 after Claimant requested an additional thirty days of benefits.

6. Section 449(c)(11) provides, in part, as follows:

(c) Every compromise and release by stipulation shall be in writing and duly executed, and the signature of the employe, widow or widower or dependent shall be attested by two witnesses or acknowledged before a notary public. The document shall specify:
* * *
(11) the fact that the claimant is represented by an attorney of his or her own choosing or that the claimant has been specifically informed of the right to representation by an attorney of his or her own choosing and has declined such representation. 77 P.S. § 1000.5(c)(11).

Pursuant to Section 449(b) of the Act,[7] the WCJ held a hearing on the Agreement where Claimant testified. Claimant acknowledged that an attorney did not represent her, and although the WCJ asked Claimant if she wanted an attorney and that the proceedings would be continued until she obtained representation, she declined. Claimant testified that she understood the full legal significance of the Agreement and that she would be entitled to a lump-sum payment of $4,800 and nothing more regarding her work-related injury. The WCJ advised Claimant once again that he would be willing to continue the proceedings until Claimant obtained representation, but she again declined stating that she had spoken to a lawyer, that there was no need for representation, and that she wanted to end the proceedings.

On December 6, 2002, the WCJ issued an order approving the Agreement releasing Employer of liability in exchange for the lump-sum payment, reasoning that Claimant understood the legal significance of the Agreement and that the Agreement was just, reasonable, and in the best interest of the parties. Claimant then appealed the approval to the Board, arguing that she did not fully understand the ramifications of the Agreement and that she had not fully recovered from her work-related injury. On appeal, the Board affirmed, reasoning that the WCJ did not err in approving the Agreement because Claimant was fully aware of the legal significance of the Agreement, and she had many opportunities to continue the proceedings in order to procure the representation of an attorney. Claimant now appeals.[8]

 Claimant argues that: (1) a claimant has twenty days to "change his or her mind" after submission and approval of a Compromise and Release Agreement reached under Section 449 pursuant to Section 419 of the Act, 77 P.S. § 853;[9] and (2) the record does not support the finding that she fully understood the significance

---

7. Section 449(b) also requires the WCJ to hold a hearing:

> The workers' compensation judge shall consider the petition and the proposed agreement in open hearing and shall render a decision. The workers' compensation judge shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement. The agreement must be explicit with regard to the payment, if any, of reasonable, necessary and related medical expenses. Hearings on the issue of a compromise and release shall be expedited by the department, and the decision shall be issued within thirty days.

77 P.S. § 1000.5(b).

8. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Schemmer v. Workers' Compensation Appeal Board (U.S.Steel)*, 833 A.2d 276 (Pa. Cmwlth.2003).

9. Section 419 of the Act provides as follows:

> **§ 853. Appeal to board from award or disallowance of referee; time for taking** Any party in interest may, within twenty days after notice of a workers' compensation judge's adjudication shall have been served upon him, take an appeal to the board on the ground: (1) that the adjudication is not in conformity with the terms of this act, or that the workers' compensation judge committed any other error of law; (2) that the findings of fact and adjudication was unwarranted by sufficient, competent evidence or was procured by fraud, coercion, or other improper conduct of any party in interest. The board may, upon cause shown, extend the time provided in this article for taking such appeal or for the filing of an answer or other pleading.

77 P.S. § 853.

of the proceedings.[10] Essentially, Claimant's first contention is that she has an absolute right to change her mind and withdraw completely from the Agreement she struck within twenty days of the WCJ's order. However, nothing in Section 419 or the Act, for that matter, gives Claimant an absolute right to change her mind and withdraw from the Agreement she entered into voluntarily. Simply put, once the WCJ enters an order approving a Compromise and Release Agreement, the order is final, and an aggrieved claimant's only recourse, if any, is an appeal to the Board under Section 419 of the Act, which is exactly what Claimant did here.

■ As to Claimant's second contention, that she did not understand the rights she was relinquishing when she signed the Compromise and Release Agreement, her testimony, in relevant part, was as follows:

[Counsel for Employer] Q. And you understand the full legal significance of your decision today?

[Claimant] A. Yes.

Q. One time payment of Forty-eight Hundred ($4,800.00) Dollars and nothing into the future?

A. Yes.

* * *

THE JUDGE: Thank you. Ms. Migdalia, you read this agreement over thoroughly and carefully, is that correct?

A. Yes.

THE JUDGE: And I have indicated to you that most people who appear here do so with a lawyer because it involves legal matters. Do you understand that?

A. Yes.

THE JUDGE: Now, I'd give you the opportunity to put this case on ice for a while and if you don't know any lawyers in town, I'll give you the number of the lawyer referral service that will give you the name, telephone number.

At least three lawyers, in this immediate area that practice Workers' Compensation Law or are familiar with Workers' Compensation law, I've done that in a number of occasion, [sic] where people have appeared here, they are uncomfortable going through this proceeding until they obtain their own lawyer's advice, as you know Mr. Nealon works for the Insurance Company, before the record is closed and I postponed it for maybe thirty days and they've either called me or written me saying to proceed. Would you like to do that?

A. No, your Honor.

THE JUDGE: You would like to get this over with today?

A. Yes.

THE JUDGE: And you are comfortable with understanding that this is it, one shot deal and then you're done?

A. Yes, your Honor.

THE JUDGE: And you want me to approve it?

A. Yes. Can I say something?

THE JUDGE: Yes.

---

10. Claimant also argues that she had not fully recovered from her work-related injury, and, accordingly, the approval of the Agreement was not in her best interests. In support of this contention, Claimant attempts to introduce to this Court a medical report issued by William Preloba, M.D., indicating that Claimant had not fully recovered as of September 27, 2002. The law is well settled that an appellate court cannot consider any evidence which is not part of the certified record in a case. *Smith v. Smith*, 431 Pa.Super. 588, 637 A.2d 622 (1993), *petition for allowance of appeal denied*, 539 Pa. 680, 652 A.2d 1325 (1994). Because this report is only attached as part of the reproduced record and is not part of the certified record, we cannot consider it on appeal. Even if we could, that report clearly states that Claimant could return to work without restriction.

A. I did seek legal advice before going all through this and I asked question[.] They answered my question. They asked me if I wanted them to represent me and I told them no because there was really nothing to claim for. I'm doing okay. I don't have no pain. My—just to find a job and that's all I want.

(Reproduced Record at 29a–32a). Based on this testimony and the record as a whole, the Board did not err in upholding the WCJ's finding that Claimant was fully aware of the legal significance of the Agreement.

Accordingly, the order of the Board is affirmed.

### *O R D E R*

AND NOW, this 24th day of March, 2004, the order of the Workers' Compensation Appeal Board, dated September 26, 2003, at No. A02–3524, is affirmed.